**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL NO. 2:12CV88-RJC-DSC**

| | |
|---|---|
| **RENEA NEELY,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief … in Support ..." (document #11), both filed May 2, 2013; and Defendant's "Motion for Order Affirming Commissioner's Decision" (document #14) and "Memorandum in Support ..." (document #15), both filed July 29, 2013. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[2]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin will be substituted for Michael J. Astrue as the Defendant in this matter. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is necessary.

[2] Pursuant to the Pretrial Scheduling Order entered on February 1, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Document #7. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On November 18, 2009, Plaintiff filed an application for a period of disability, Social Security Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") alleging that she was unable to work after January 14, 2008. (Tr. 54, 175-88). Plaintiff subsequently amended her alleged onset date to June 15, 2007. (Tr. 34).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on January 21, 2011. (Tr. 30-51).

Following the hearing, the Administrative Law Judge (ALJ) sent Plaintiff for a consultative mental examination by Dr. Karen Marcus. Dr. Marcus examined Plaintiff on March 10, 2011. (Tr. 911-22). On April 28, 2011, and after receiving a copy of Dr. Marcus' report, Plaintiff requested a supplemental hearing. Plaintiff sought to obtain further testimony from the Vocational Expert ("V.E.") in light of Dr. Marcus' examination and a "Comprehensive Clinical Assessment" completed by Appalachian Community Services in December 2010 ("ACS Assessment") which the ALJ did not receive until after the hearing. (923-31).

On June 24, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 9-29). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14). The ALJ also found that Plaintiff suffered from disorders of the back and legs, anxiety, depression, migraine headaches and post-traumatic stress disorder which were severe impairments within the meaning of the regulations (Tr. 14), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 18). The ALJ then

found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to perform a range of sedentary work.[4] The ALJ found that:

> [Plaintiff] has the residual functional capacity to perform reduced sedentary work…. I specifically find [Plaintiff] can lift/carry up to 10 pounds frequently. She can stand or walk for two hours, each, of an eight hour workday, and can sit for six hours of an eight hour workday. She must be allowed to exercise a sit/stand option. [Plaintiff] can occasionally use ramps and stairs, and can occasionally balance and stoop. She can never climb ropes, ladders and scaffolds. She should have only occasional contact with the public, and she should only work in a low stress job with only occasional changes in work setting and decision-making. She is also limited to performing simple, routine and repetitive tasks.

(Tr. 19). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged. The ALJ further found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible, and that those symptoms would not preclude sedentary work as described in the assessed RFC (Tr. 19-20). Based upon this RFC, the ALJ then found that Plaintiff could not perform her past relevant work as a fast food employee, certified nursing assistant, or secretary. (Tr. 23).

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the V.E. identified light jobs (table worker, ampoule sealer, and

---

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(c), 416.967(c).

carding machine operator) that Plaintiff could perform. The V.E. also stated that 36, 600 of these jobs existed in North Carolina. (Tr. 24). The ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that she was not disabled during the relevant period. Id.

Plaintiff filed a timely Request for Review by the Appeals Council. By notice dated September 21, 2012, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-6).

Plaintiff filed the present action on November 21, 2012. She assigns error to the ALJ's assessment of her RFC, and specifically to his evaluation of a checklist opinion prepared by her treating physician Dr. Donald Dewhurst, and to the ALJ's assessment of her credibility and subjective complaints of pain. See Plaintiff's "Brief … in Support ..." at 21-25 (document #11). Plaintiff also contends that the ALJ erred in failing to conduct a supplemental hearing. Id. at 18-20. The parties' cross-motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir.

4

1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled at any time.[5]

---

[5] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable

5

Plaintiff argues that the ALJ erred in assessing her RFC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. It is the claimant's burden, however, to establish her RFC by demonstrating how her impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The ALJ's RFC determination is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history, as well as the opinion of a state agency reviewing physician. Plaintiff admitted at the hearing that she is capable of lifting ten pounds (Tr. 37). With respect to Plaintiff's postural limitations, state agency physician Dr. Frank Virgili opined in January 2008 that Plaintiff could sit for six hours in an eight hour workday (Tr. 418) and that she could occasionally use ramps and stairs, balance, and stoop. (Tr. 419). The ALJ adopted those limitations verbatim. (Tr. 19, 22). Dr. Virgili also opined that Plaintiff could stand or walk for six hours in an eight hour work day. (Tr. 418) and that she could occasionally climb

---

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

ropes, ladders, and scaffolds. (Tr. 419). These limitations are less restrictive than those the ALJ included in the assessed RFC. (Tr. 19 & 22).

The ALJ properly relied upon this opinion because state agency physicians such as Dr. Virgili are "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Social Security Act." See 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i); see also 20 C.F.R. §§ 404.1527(c)(6) & 416.927(c)(6). The ALJ is entitled to rely on state agency reviewing physicians insofar as they have considered all the relevant evidence. Lusk v. Astrue, No. 11-196, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant medical evidence, citing 20 C.F.R. §§ 404.1527(c) and (e), 416.927(c) and (e)). See also Stanley v. Barnhart, 116 Fed. App'x 427, 429 (4th Cir. 2004); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Dr. Virgili's opinion is also consistent with and well supported by the record as a whole, as discussed below. See 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4).

The ALJ properly concluded that Plaintiff's back condition was treated effectively with surgery and medication. (Tr. 619, 880, 887, 906). The ALJ noted that Plaintiff's medical records indicate that she consistently had 5/5 muscle strength in her upper and lower extremities (Tr. 59, 69, 83, 84, 88, 98, 99, 367, 391, 399, 402, 612, 671, 685, 734, 824, 831, 834), that she had normal muscle bulk and tone (Tr. 350, 399, 402, 612, 671, 685, 824, 831, 834), that her gait generally was normal (Tr. 59, 69, 83, 84, 88, 98, 99, 402, 612, 626, 686, 731, 753, 824, 834, 843, 878, 883, 887, 889, 892, 974, 1004), and that her straight leg testing generally was normal (Tr. 626, 686, 734, 824). As the Fourth Circuit has held, "[i]f a symptom can be reasonably

controlled by . . . treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); 20 C.F.R.§§ 404.1529(c)(3)(v) & 416.929(c)(3)(v).

After Plaintiff's first surgery in November 2007 (Tr. 312-13), there was no abnormal alignment of her lumbar spine. An MRI in April 2008 showed only mild degenerative disc disease and no significant disc herniation. (Tr. 545, 675). Plaintiff progressed well after her second surgery in December 2009. (Tr. 693-94, 734). MRIs in March 2010 and September 2010 revealed no abnormalities or complications. (Tr. 805, 834). The ALJ also noted that a few days after her fusion, Plaintiff was walking in the hallway, climbing up and down stairs, and asking to be discharged. (Tr. 702). Plaintiff reported that she was "pleased with the results" of her fusion, which initially provided "complete relief of her lower extremity pain" (Tr. 702). Although Plaintiff did complain of pain two weeks after her fusion (Tr. 703), her doctor explained that it was normal to have "quite a bit of pain" at that time. (Tr. 703). Plaintiff reported shortly thereafter that she was "pleased" with the results of her fusion. (Tr. 733).

The ALJ emphasized Plaintiff's own admissions that her back pain was well-controlled with medication. (Tr. 619, 880, 887, 906, 933, 937, 938, 948, 958, 962, 966, 978, 979).

Plaintiff's treating physician, Dr. Donald Dewhurst, provided her with routine, conservative treatment. (Tr. 275, 880, 887, 906). Although Dr. Dewhurst recommended that Plaintiff attend physical therapy in late June 2010 (Tr. 900), his records from mid-July 2010 indicate that she "did not undergo physical therapy as the pain improved quickly after [her late June] visit." (Tr. 898). The ALJ noted that Plaintiff's back condition actually improved for a period of time subsequent to her alleged onset date. (Tr. 402). Plaintiff presented to the emergency room in June 2010 complaining of back pain two days after a minor motor vehicle

8

accident, but she left before she could be evaluated (Tr. 850-52).

The ALJ noted that on the day after she was discharged following her first surgery, Plaintiff's legs showed normal strength. (Tr. 332). Plaintiff made significant improvement over the course of her brief hospitalization for that surgery. She was soon smiling, laughing, walking, and asking to be discharged. (Tr. 368). As stated previously, Plaintiff's medical records generally indicate that her gait was normal. (Tr. 59, 69, 83, 84, 88, 98, 99, 402, 612, 626, 686, 731, 753, 824, 834, 843, 878, 883, 887, 889, 892, 974, 1004).

The ALJ properly concluded that Plaintiff's headaches were well-controlled by medication (Tr. 493, 880, 882, 883, 898, 906, 948). Her headaches occurred relatively infrequently. (Tr. 309, 349, 836, 842, 886, 948).

Significantly, Plaintiff's medical providers observed on more than fifty occasions that she did not appear to be in any distress and/or that she was smiling and laughing during her visits. (Tr. 309, 350, 399, 551, 558, 561, 565, 580, 588, 597, 609, 612, 618, 621, 622, 626, 628, 671, 685, 751, 752, 753, 762, 763, 764, 777, 778, 779, 789, 806, 823, 834, 883, 886, 892, 934, 936, 938, 940, 943, 949, 951, 953, 955, 956, 959, 963, 967, 969, 974, 978, 995, 1001).

Plaintiff's mother stated that Plaintiff had no difficulty reaching or using her hands. (Tr. 102, 269, 420). This is consistent with Dr. Virgili's opinion that Plaintiff had no manipulative limitations. (Tr. 420).

The ALJ repeatedly acknowledged that Plaintiff suffered from severe mental impairments and accounted for those impairments in the assessed RFC. (Tr. 14 & 22). The ALJ noted that Dr. Marcus examined Plaintiff in March 2011. Dr. Marcus opined that Plaintiff demonstrated problems with attention and concentration (Tr. 917), that she would likely deal poorly with stress

9

id., and that she would have "mild difficulty" understanding and remembering simple instructions (Tr. 919). Dr. Marcus found that Plaintiff would have "moderate difficulty" carrying out simple instructions id., interacting appropriately with the public (Tr. 920), and responding appropriately to usual work situations. Id. Dr. Marcus defined the term "mild difficulty" as meaning that Plaintiff "can generally function well" and defined the term "moderate difficulty" as meaning that Plaintiff "is still able to function satisfactorily." (Tr. 919). Dr. Marcus also opined that Plaintiff would have "marked difficulty" carrying out complex instructions and making judgments on complex work-related matters (Tr. 919-20). Dr. Marcus defined the term "marked difficulty" as meaning that Plaintiff had "a substantial loss in the ability to effectively function." (Tr. 919). The ALJ specifically accounted for those limitations in his RFC finding. (Tr. 19).

The ALJ correctly stated that notwithstanding Dr. Marcus' stated limitations, the record contains evidence that Plaintiff's memory and concentration were normal. (Tr. 15). As the ALJ emphasizes, the ACS Assessment (924-30), conducted only four months prior to Dr. Marcus' examination, indicated that Plaintiff's memory was within normal limits; that she was able to listen, focus, pay attention, follow instructions, and follow through on tasks; and that she was able to avoid careless mistakes. (Tr. 925-26). The ACS assessment is consistent with the opinion of state agency psychologist Dr. Nancy Herrera that Plaintiff had no difficulty in maintaining concentration, persistence, or pace. (Tr. 435). The ACS Assessment is also consistent with Dr. Marcus' report that Plaintiff was able to understand, remember, and carry out simple instructions and that she was able to make judgments on simple work-related matters. (Tr. 919). Plaintiff's mother indicated that although Plaintiff "don't remember a lot of things" and "has a hard time

concentrating on things," she was able to pay bills, use a checkbook, and manage a savings account. (Tr. 267, 269, 310).

The ALJ noted that Plaintiff was never hospitalized for psychiatric treatment and that she was not treated by a mental health professional until December 2010, more than three years after her alleged onset date. (914, 931). Although Plaintiff complained to Dr. Dewhurst in August 2010 that she was experiencing depression, he reported that her mood and affect were normal. (Tr. 891-92). When Plaintiff did seek treatment from a mental health professional, she was advised that she could benefit from conservative treatment. (Tr. 929).

Plaintiff argues that the ALJ failed to accord adequate weight to Dr. Dewhurst's checklist opinion concerning limitations beyond those that the ALJ included in his RFC finding. Document #11 at 23. The Fourth Circuit has held that a treating physician's opinion need not be accorded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

A checklist opinion is "entitled to relatively little weight." Berrios Lopez v. Sec'y of Health & Human Servs., 952 F.2d 427, 431 (1st Cir. 1991). See also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more

weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion"); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 & 32 (2d Cir. 2004) (checklist opinions are "only marginally useful" and "not particularly informative"); Craig, 76 F.3d at 590 (physician's opinion that is not supported by objective evidence should be accorded significantly less weight); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) (checklist forms "unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence") (citing Third Circuit authority).

As discussed below, the ALJ properly assigned "little weight" to Dr. Dewhurst's checklist opinion (Tr. 23) and sufficiently explained his reasons for doing so. The ALJ explained that to the extent that Dr. Dewhurst's stated limitations are more restrictive than the assessed RFC, those opinions are inconsistent with substantial evidence, including Dr. Dewhurst's own treatment records. (Tr. 880, 882, 883, 887, 889, 898; see also Tr. 933, 934, 936, 937, 938, 940, 943, 945, 948, 949, 951, 953, 955, 956, 958, 959, 962,963, 966, 967, 969, 974, 978, 979).

Dr. Dewhurst's opinion that Plaintiff's pain constantly interfered with her attention and concentration (Tr. 907) is contradicted by his statement on the previous page of the same checklist opinion that she had achieved "reasonable pain control." (Tr. 906). Dr. Dewhurst indicated that Plaintiff's headaches and back pain were well-controlled with medication. (Tr. 880, 882, 883, 887, 898, 906, 933, 937, 938, 948, 958, 962, 966, 978, 979).

The ALJ correctly stated that Dr. Dewhurst provided Plaintiff with routine, conservative treatment. (Tr. 275, 880, 887, 906). Plaintiff declined Dr. Dewhurst's recommendation for physical therapy, reporting that she "improved quickly" without therapy. (898, 900). An ALJ

12

may properly discount a claimant's allegation that she is disabled where "the level . . . of treatment is inconsistent with the level of complaints." SSR 96-7p, at *7. See also Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the . . . credibility" of complainant's allegation that she is disabled).

The ALJ also found that Dr. Dewhurst "is not a mental health expert" (Tr. 23, referring to Tr. 906 & 910). The regulations allow an administrative law judge to discount an opinion on this basis. 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5).

In short, the ALJ provided sufficient reasons for his decision to accord "little weight" to the portions of Dr. Dewhurst's checklist opinion that are more restrictive than the assessed RFC. Those reasons are supported by substantial evidence.

Plaintiff also argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b); and § 404.1529(b)); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The ALJ is not required to discuss each factor enumerated in 20 C.F.R. §§ 404.1529(c) and 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The record contains evidence of Plaintiff's disorders of the back and legs, anxiety, depression, migraine headaches and post-traumatic stress disorder – which could be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. This determination is supported by substantial evidence.

The ALJ thoroughly discussed Plaintiff's allegations of pain. (Tr. 15-23). The ALJ then specifically discounted the credibility of those allegations because of Plaintiff's own admissions that her pain was reasonably controlled by medication. (Tr. 22 & 23, referring to Tr. 880, 882, 883, 887, 898, 906, 933, 937, 938, 948, 958, 962, 966, 978, 979). Plaintiff also repeatedly reported that she suffered no side effects from her medication. (Tr. 880, 888, 937, 948, 962,

966). The ALJ was entitled to rely on those admissions as well. Plaintiff has not sustained her burden of establishing that her pain or the side effects of her medications caused any limitations beyond those that the ALJ set forth in the assessed RFC. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

Plaintiff also asserts generally that the ALJ failed to consider her lack of formal education beyond the ninth grade and her GAF scores (31 and 50). (document #11 at 23-24). The ALJ repeatedly referred to Plaintiff's limited education (Tr. 13, 14, 23 and 24). The ALJ expressly accounted for Plaintiff's limited education in the assessed RFC by restricting her to performing simple, routine and repetitive tasks. (Tr. 19). At step five, the ALJ relied upon the V.E.'s testimony that was based on a hypothetical individual who had the same education as Plaintiff. (Tr. 24, referring to Tr. 48-49). Plaintiff offers no argument or evidence that her limited education caused any further restrictions.

The ALJ restricted Plaintiff's RFC to performing simple, routine and repetitive tasks in a low stress job with only occasional public contact, changes in work setting, and decision-making. (Tr. 19). Plaintiff has not established that her GAF scores support any greater restrictions. Moreover, assuming arguendo that the ALJ had erred on this point, Plaintiff has not met her burden of establishing that any such error caused her any prejudice. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); Camp v. Massanari, No. 01-1924, 2001 WL 1658913 at **1 (4th Cir. Dec. 27, 2001) ("any error on the part of the ALJ was harmless" because plaintiff "made no showing of prejudice"); Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("even assuming that the ALJ did err, such error by the

ALJ was harmless because remand would not lead to a different result.")

Finally, Plaintiff argues that the ALJ erred in denying her request for a supplemental hearing. Plaintiff contends that the ALJ's denial of her request violated the Agency's Hearings, Appeals and Litigation Law Manual ("HALLEX"). Document #11 at 18-20. HALLEX I-2-7-30(H) does contemplate that an ALJ will either grant a request for a supplemental hearing or award benefits to the claimant. HALLEX I-2-7-30(H).

However, as the Fourth Circuit has held, HALLEX does "not have the force of law." Pass v. Chater, 65 F.3d 1200, 1204 n. 3 (4th Cir. 1995). Indeed, as the Supreme Court has observed, HALLEX is not binding on the Agency itself. Schweiker v. Hansen, 450 U.S. 785, 789 (1981). For those reasons, several courts have affirmed denials of Social Security benefits notwithstanding the ALJs departure from HALLEX. See Lovett v. Astrue, No. 4:11-cv-1271, 2012 WL 3064272 at *9-11 (E.D. Mo. July 6, 2012) (Mag. J. Report & Rec.), adopted, 2012 WL 3062803 (July 27, 2012); Gentry v. Comm'r of Soc. Sec., No. 11-cv-15422, 2012 WL 7802350 at * 7-8 (E.D. Mich. Dec. 10, 2012) (Mag. J. Report & Rec.), adopted, 2013 WL 1211566 (Mar. 25 2013); Maiben v. Astrue, No. 09-0408, 2010 WL 761334 at *4-5 (S.D. Ala. Mar. 4, 2010).

As in Lovett, Plaintiff "has failed to either show or allege any prejudice resulting from the ALJ's failure to hold a supplemental hearing" and "has failed to proffer any evidence that could and would have been adduced during a supplemental hearing that would have led to a different result." 2012 WL 3064272 at *11. As in Lovett, remand is not warranted here. Id.; see also Shinseki, 556 U.S. at 409; Camp, 2001 WL 1658913 at **1; Dover, 2012 WL 1416410 at **5.

Here, Plaintiff's request for a supplemental hearing was limited to an effort to "obtain

testimony from the vocational expert regarding the existence of jobs that [Plaintiff] could do taking into consideration functional limitations supported by" Dr. Marcus' assessment and the ACS Assessment. (Tr. 296). As discussed above, the ALJ expressly considered Dr. Marcus' assessment and the ACS Assessment. He accounted for them in his RFC finding and received testimony from a vocational expert concerning a hypothetical individual with the same RFC as Plaintiff. (Tr. 19 & 48-49). Plaintiff has not shown how Dr. Marcus' assessment or the ACS Assessment required the ALJ to include limitations beyond those that he set forth in his RFC finding and in the hypothetical question that he posed to the V.E.

Although the medical records establish that the Plaintiff experienced pain to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED;** that Defendant's "Motion for Order Affirming Commissioner's Decision" (document #14) be **GRANTED**; and

that the Commissioner's determination be **AFFIRMED.**

## V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: July 30, 2013

David S. Cayer
United States Magistrate Judge